# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JOSE ANTONIO TORRES RIVERA,

                    Plaintiff,

       v.

KILOLO KIJAKAZI,[1]

                  Defendant.

CIVIL ACTION NO. 3:20-CV-02324

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Jose Antonio Torres Rivera ("Rivera") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Doc. 1). For the following reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be **AFFIRMED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 8, 2019, Rivera filed an application under Title II for a period of disability and disability insurance benefits, alleging disability beginning October 1, 2010. (Doc. 14-2, at 29). The Social Security Administration initially denied the application on March 7, 2019, prompting Rivera's request for a hearing, which Administrative Law Judge

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

("ALJ") Gwendolyn M. Hoover held on December 20, 2019. (Doc. 14-2, at 115). In a written decision dated February 4, 2020, the ALJ determined that Rivera is not disabled and therefore not entitled to benefits or income under Title II. (Doc. 14-2, at 26). The Appeals Council subsequently denied Rivera's request for review on October 16, 2020. (Doc. 14-2, at 2).

On December 11, 2020, Rivera commenced the instant action. (Doc. 1). On December 22, 2020, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). (Doc. 6). The Commissioner responded on August 16, 2021, providing the requisite transcripts from Rivera's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Rivera raising three bases for reversal or remand. (Doc. 17; Doc. 20). This matter is ripe for disposition.

II.  **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A.    ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now-familiar five-step analysis." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.    JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r of Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately

3

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Rivera is disabled, but whether the Commissioner's determination that Rivera is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In her written decision, the ALJ determined that Rivera "was not been under a disability, as defined within the Social Security Act, at any time from October 1, 2010, the alleged onset date, through December 31, 2019, the date last insured." (Doc. 14-2, at 42). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). The ALJ found that Rivera last met the insured status

requirements of the Social Security Act on December 31, 2019. (Doc. 14-2, at 31).

### A.    STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Rivera "engaged in substantial gainful activity from January 1, 2010 through February 2014." (Doc. 14-2, at 31).

### B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to step three. Here, the ALJ found that Rivera has the following severe impairments: degenerative disc disease of the lumbar spine, diabetes with peripheral neuropathy, obesity, osteoarthritis of the knees, depression, anxiety, mood disorder, and chronic pain syndrome. (Doc. 14-2, at 32). The ALJ also determined that Rivera has the following non-severe impairment: hypertension, a history of pancreatitis, a pilonidal

cyst, GERD, headaches, and hyperlipidemia. (Doc. 14-2, at 32).

C.     STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). The ALJ considered the listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 11.14 (peripheral neuropathy), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. 14-2, at 35). Here, the ALJ determined that none of Rivera's impairments, considered individually or in combination, meet or medically equal the severity of a listed impairment. (Doc. 14-2, at 19-32).

D.     RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ examines all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry in which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c). Here, the ALJ found that while Rivera's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Rivera's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 37).

Considering all the evidence in the record, the ALJ determined that Rivera had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b)," subject to the following non-exertional limitations:

> [Rivera] was able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch but could never climb ladders, ropes, or scaffolds or crawl. He must have avoided concentrated exposure to extreme cold. He required the use of a cane with his dominant right hand while ambulating on any uneven terrain or for prolonged ambulation (fifty yards). He was limited to simpler routine tasks, was able to make simple work related decisions, and could tolerate occasional changes in the work setting. He could tolerate no interaction with the public and occasional interaction with co-workers.

 (Doc. 14-2, at 36).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers

throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess,* 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Rivera was unable to perform any past relevant work as an industrial truck operator, poultry boner, hand packager, and lumber puller. (Doc. 14-2, at 41). Therefore, the ALJ proceeded to step five. (Doc. 14-2, at 41).

F.    STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Rivera's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Rivera can perform. (Doc. 14-2, at 41). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Rivera could perform the requirements of occupations such as a conveyor line bakery worker, garment bagger, and bakery racker, which are jobs with positions ranging from 8,100 to 17,000 nationally. (Doc. 14-2, at 42). Accordingly, the ALJ determined that Rivera was not disabled during the relevant period and denied his application for benefits. (Doc. 14-2, at 42).

IV.    DISCUSSION

On appeal, Rivera raises two bases for reversal or remand. (Doc 17). First, Rivera argues that the ALJ's RFC failed to consider his medically determinable limitations. (Doc.

17, at 19). Second, Rivera submits that the ALJ failed to afford proper weight to the opinion from his treating source, as compared to the opinions from two state agency consultants. (Doc. 17, at 21). In response, the Commissioner avers that substantial evidence supports the ALJ's decision. (Doc. 20, at 26).

A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT.

Rivera's first claim of error challenges the ALJ's RFC assessment. Specifically, Rivera argues that the ALJ failed to consider his documented and diagnosed limitations for his determined severe and non-severe impairments, including Rivera's degenerative disc disease of the lumbar spine, diabetes with peripheral neuropathy, obesity, osteoarthritis of the knees, depression, anxiety, mood disorder, chronic pain syndrome, diagnosed and treated bilateral knee pain, bilateral ankle pain, left leg pain, headaches, and panic disorder. (Doc. 17, at 13, 19). Rivera avers that the ALJ discounted his statements concerning the intensity, persistence, and limiting effects of the alleged symptoms without explaining why the ALJ did not find statements about his limitations to be credible. (Doc. 17, at 14). The Commissioner responds that the ALJ did explain how the medical records did not corroborate Rivera's alleged symptoms and that Rivera failed to identify evidence to support his assertions. (Doc. 20, at 8).

The Court of Appeals has ruled that the ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment(s). 20 C.F.R. § 404.1545(a); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 112, 121 (3d Cir. 2000). In

determining the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). The ALJ, however, is only required to include limitations credibly established by the medical evidence and not every limitation alleged. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

The ALJ properly applied the new set of Social Security Regulations for evaluating medical evidence that eliminates the hierarchy of medical opinions and states that an ALJ will not defer to any medical opinions, even those from treating sources. (Doc. 14-2, at 40); *see* 20 C.F.R. § 404.1520c(a). In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (plaintiff's "subjective complaints must be substantiated by medical evidence."). Additionally, the ALJ should consider the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Subjective complaints, then, must be given due consideration, but will be evaluated in the context of objective evidence. *See* 20 C.F.R. § 404.1529(a); *see also Chandler*, 667 F.3d at 363 ("statements about your pain or other symptoms will not alone establish that you are disabled."). "To establish disability, there must be objective medical evidence from

an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage v. Saul*, 469 F. Supp. 3d 311, 337 (M.D. Pa. 2020). A claimant's allegations alone will not establish that he is disabled. 20 C.F.R. § 404.1529.

The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

The undersigned finds that the ALJ's analysis of Rivera's subjective symptom allegations is supported by substantial evidence. Rivera asserts that the ALJ failed to consider the record as a whole and that the RFC "contains insufficient exertional and non-exertional limitations, and despite multiple severe physical limitations, sufficient exertional limitations." (Doc. 17, at 15). To be sure, the ALJ found that Rivera has the following severe impairments: degenerative disc disease of the lumbar spine, diabetes with peripheral neuropathy, obesity, osteoarthritis of the knees, depression, anxiety, mood disorder, and chronic pain syndrome. (Doc. 14-2, at 32). The ALJ noted that Rivera alleges "having difficulty lifting, squatting, bending, standing, reaching, walking, sitting, and kneeling," as well as an impaired memory with difficulty concentrating, understanding, following instructions, and completing tasks. (Doc. 14-2, at 26). The ALJ also referred to Rivera's testimony, noting that he claimed to

have difficulty sleeping and handling stress, and experienced panic attacks "almost all of the time." (Doc. 14-2, at 36).

The ALJ noted Rivera's alleged symptoms pertaining to his physical limitations. The ALJ found that diagnostic testing of Rivera's lumbar spine indicates abnormal findings and that medical records indicate Rivera was obese with elevated blood glucose levels, antalgic gait, and diminished range of motion of the lumbar spine. (Doc. 14-2, at 37). However, the ALJ noted that Rivera's medical records do not indicate Rivera received treatment for his symptoms pertaining to his severe physical impairments. (Doc. 14-2, at 38). The ALJ explained that Rivera's treatment measures include the use of prescribed pain medication, over-the-counter pain medication, and prescribed medication for diabetes mellitus. (Doc. 14-2, at 38). "Such treatment measures in conjunction with the documented abnormal clinical examination findings, abnormal laboratory testing findings, and abnormal diagnostic testing findings referenced above provide some support for the claimant's allegations regarding his symptoms and limitations pertaining to his severe physical impairments." (Doc. 14-2, at 38). Thus, the ALJ concluded that the evidence of record indicates that Rivera "did not experience symptoms and limitations related to his severe physical impairments between his alleged onset date of disability and date last insured to the extent he has alleged." (Doc. 14-2, at 38).

Regarding Rivera's mental impairments, the ALJ found that Rivera's medical records contain notable evidence that is not consistent with his symptom allegations since January 10, 2018, with the intensity, frequency, or persistence that he suggested. (Doc. 14-2, at 39). The ALJ explained that Rivera's records indicate normal mood, affect, behavior, judgment, attention, concentration, and speech, as well as intact thought associations, a cooperative attitude, and an appropriate manner. (Doc. 14-2, at 38). Further, the ALJ noted that while

the record shows Rivera received treatment for symptoms related to his mental impairments, "the entirety of [Rivera]'s medical records does not indicate [Rivera] has required any treatment at an emergency room department or any inpatient mental health therapy treatment between January 10, 2018 and his date last insured." (Doc. 14-2, at 39). The ALJ also explained that the entirety of Rivera's medical records, "including the lack of persistently documented abnormal clinical examination findings pertained to his physical and mental impairments and the conservative treatment for symptomatology related to his severe physical impairments, is not consistent with [Rivera]'s allegations regarding his limitations in his activities of daily living." (Doc. 14-2, at 39).

In crafting the RFC, the ALJ considered all of Rivera's physical and mental health impairments, including his severe impairments of degenerative disc disease of the lumbar spine, diabetes with peripheral neuropathy, obesity, osteoarthritis of the knees, depression, anxiety, mood disorder, and chronic pain syndrome, and his non-severe impairments of hypertension, a history of pancreatitis, a pilonidal cyst, GERD, headaches, and hyperlipidemia. (Doc. 14-2, at 32). Based on all the above-mentioned evidence, the ALJ concluded that Rivera's symptom and limitations allegations "are not entirely consistent with the objective evidence of record." (Doc. 14-2, at 41). The ALJ accommodated some degree of Rivera's severe physical impairments in his RFC "by limiting him to a range of work at the light exertional level that includes postural and environmental limitations and which includes the use of a cane with his dominant right hand while ambulating on any uneven terrain or for prolonged distance of fifty yards." (Doc. 14-2, at 41). To accommodate for Rivera's mental impairments, the ALJ limited Rivera "to a range of work that entails simple routine tasks, making simple work related decisions, occasional changes in the work setting, no interaction

13

with the public, and occasional interaction with co-workers." (Doc. 14-2, at 41). Therefore, the ALJ properly considered all the evidence of record, including Rivera's treatment records, symptom allegations, and activities of daily living.

Accordingly, substantial evidence supports the ALJ's evaluation of Rivera's limitations and RFC determination.

B.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S ASSESSMENT OF THE MEDICAL OPINIONS OF RECORD.

Next, Rivera asserts that the ALJ's decision is not supported by substantial evidence because the ALJ abused her discretion in failing to afford proper weight to the opinion of treating sources, as compared to the opinions from state agency consultants. (Doc. 17, at 21). Rivera further avers that the ALJ should have directed consultative exams or engaged the services of a medical expert to assist in the consideration and development of the record. (Doc. 17, at 24). In response, the Commissioner contends that Rivera improperly relies on old regulations that do not apply to this proceeding and that the ALJ followed the regulations to evaluate medical opinions. (Doc. 20, at 11-23).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20

14

C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x

15

260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), and 20 C.F.R. §§ 404.1512(a), 416.912(a)). "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." *Kenyon v. Colvin*, No. 3:12-CV-1812, 2013 WL 6628057, at *5 (M.D. Pa. Dec. 16, 2013). "The decision to order a consultative examination is within the sound discretion of the ALJ." *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002). Under the regulations, the Commissioner "may" request a claimant to attend a consultative examination. 20 C.F.R. § 404.1512. The regulations authorize the ALJ to obtain a consultative examination if there remains information needed to make a disability determination, "such as clinical findings, laboratory tests, a diagnosis or a prognosis" which cannot be obtained from the medical record. 20 C.F.R. § 404.1519a. Such an examination may be requested when the Commissioner is not presented with the information that is necessary to make a decision or is presented with inconsistent information. 20 C.F.R. § 404.1519a(a)-(b). If the inconsistency or lack of information does not allow the Commissioner to make a decision, the Commissioner may take follow-up steps to develop the record, including by re-contacting a medical source. 20 C.F.R. § 404.1519a(b)(2)(i); *see also Swink v. Saul*, 931 F.3d 765, 770-71 (8th Cir. 2019); 20 C.F.R. § 404.1519a.

In *Herring v. Colvin*, the plaintiff "points to the types of things that the ALJ did not do" as grounds for reversible error and the Court rejected this argument explaining:

16

> Plaintiff is conflating the two requirements for a remand based on failure to
> develop the record. An ALJ must have failed to develop the record, and
> prejudice must be shown[.] Plaintiff has failed to proffer or describe any
> additional evidence the ALJ should have considered and has failed to make
> any new argument based on existing evidence.

181 F.Supp.3d 258, 269 (M.D. Pa. 2014).

In this case, the ALJ's evaluation comported with the new regulatory scheme and was based on substantial evidence. (Doc. 14-2, at 40-41). In formulating the RFC assessment, the ALJ reviewed the medical evidence of record, including state agency medical consultant, Richard W. Williams, Ph.D. ("Dr. Williams"), state agency psychological consultant, Kevin Hollick, D.O. ("Dr. Hollick"), and treating mental health therapist, Andres Ramirez ("Dr. Ramirez"). (Doc. 14-2, at 40).

First, Dr. Williams completed a disability determination explanation for Rivera's medically determinable impairments and severity on February 22, 2019. (Doc. 14-3, at 29-37). Dr. Williams opined that Rivera is unable to work due to both physical and mental health functional limitations. (Doc. 14-3, at 36). Specifically, Dr. Williams noted that Rivera has a slight limitation with personal care, needs reminds for medication, does not prepare his own meals, does no household chores, and does not manage money; however, Rivera can drive and go outside alone. (Doc. 14-3, at 36). Regarding Rivera's mental limitations, Dr. Williams found that Rivera has issues with chronic pain, is dealing with employment frustrations, and has relationship issues with both his girlfriend and siblings. (Doc. 14-3, at 37). Dr. Williams opined that "[a]lthough [Rivera] does have some mental issues, the medical data in file does not establish a severity level of mental impairment that would prohibit completion of tasks." (Doc. 14-3, at 37).

In evaluating the opinion of Dr. Williams, the ALJ determined its persuasiveness by considering both the consistency and supportability of the opinion. Regarding supportability, the ALJ explained that the opinion is supported by explanatory comments and objective evidence pertaining to Rivera's severe physical impairments. (Doc. 14-2, at 40). Further, the ALJ articulated that Dr. Williams' opinion is consistent with the medical evidence of record, "including clinical examination findings of normal musculoskeletal range of motion, a negative straight leg raising test, normal coordination, normal motor skills, normal muscle bulk and tone in the lower extremities, [and] 5/5 strength 'throughout'." (Doc. 14-2, at 40). However, "to more fully accommodate all of [Rivera]'s symptoms related to his physical impairments," the ALJ decided to provide a more restrictive RFC than indicated by Dr. Williams. (Doc. 14-2, at 40).

Next, Dr. Hollick completed a physical residual functional capacity assessment and assessment of vocational factors on March 6, 2019. (Doc. 14-3, at 38-42). Upon reviewing Rivera's medical evidence of record, Dr. Hollick opined that Rivera can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand, walk, and sit for a total of 6 hours in an 8-hour workday; frequently climb ramps/stairs, balance, kneel, crouch, and crawl; and occasionally climb ladders/ropes/scaffolds and stoop. (Doc. 14-3, at 39-40). Dr. Hollick noted that Rivera should avoid concentrated exposure to vibrations and hazards (machinery, heights, etc.). (Doc. 14-3, at 40). The ALJ found that Dr. Hollick's opinion was not persuasive. (Doc. 14-2, at 40). Regarding supportability, the ALJ explained that Dr. Hollick provided some explanatory comments to support his opinion. (Doc. 14-2, at 40). However, the ALJ articulated that Dr. Hollick's opinion is inconsistent with the medical

evidence of record, "including the documented abnormal clinical examination findings pertaining to [Rivera]'s mental impairments." (Doc. 14-2, at 40).

Treating mental health therapist, Dr. Ramirez, began treating Rivera on February 24, 2015, and completed a mental RFC assessment on September 4, 2019. (Doc. 14-7, at 860-65). Dr. Ramirez opined that Rivera is unable to work due to medical problems, including NIDDM, hypertension, ankle pain, diabetes type II, and brain cyst, and because Rivera's "physical pain is perceived as highly debilitating and main source of his depression and anxiety." (Doc. 14-7, at 861, 865). Dr. Ramirez stated that Rivera's prognosis was "poor due to the progression of his medical problems," and that Rivera is compliant with treatment. (Doc. 14-7, at 861). Dr. Ramirez also completed a checkbox questionnaire, finding that Rivera has a marked and/or extreme limitation regarding most areas of mental functioning. (Doc. 14-7, at 862-65). Dr. Ramirez noted that Rivera's impairments substantially interfere with his ability to work on a regular and sustained basis at least 15% of the time and that Rivera would have to miss more than ten days per month because of his mental impairments or for treatment of the mental impairments. (Doc. 14-7, at 865).

Again, in evaluating the opinion of Dr. Ramirez, the ALJ determined its persuasiveness by considering both the consistency and supportability of the opinion. Regarding supportability, the ALJ stated "the opinion is not supported by specific citation to any abnormal clinical examination findings." (Doc. 14-2, at 40). Further, addressing consistency, the ALJ noted that Dr. Ramirez's opinion is not consistent with clinical examination findings that show normal mood, affect, behavior, judgment, attention, concentration, fund of knowledge, and speech, as well as intact thought associations, a cooperative attitude, an appropriate manner, a logical thought process, good insight, good

19

judgment, and intact decision-making capacity. (Doc. 14-2, at 40). Further, the ALJ explained that, unlike Dr. Ramirez's opinion, the clinical findings show Rivera "is stable and is able to use coping skills to manage his anxiety and distress." (Doc. 14-2, at 40). The ALJ also remarked that the opinion of Dr. Ramirez is inconsistent with Rivera's "lack of inpatient or emergent mental health therapy treatment since January 10, 2018." (Doc. 14-2, at 40).

Thus, the ALJ's evaluation of the medical opinions of Dr. Williams, Dr. Hollick, and Dr. Ramirez comported with the Social Security Regulations. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to explain additional factors. To the extent Rivera asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." See *Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015).

Additionally, the ALJ's finding of disability was consistent with the medical evidence of record, which, along with Rivera's medical examinations and his reported activity level, did not reflect the same severity of work-related limitations as those Rivera alleged. Although the ALJ has a duty to assist a claimant in developing a full and fair record, he is not required to "search out relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). Rather, the ALJ must ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts or ambiguities in the evidence. Furthermore, because Rivera was represented by counsel at the administrative level, the ALJ is entitled to assume

20

that the claimant is making the strongest case possible for benefits. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

Similar to the facts in *Herring*, Rivera failed to identify any contradictions or omissions in the record pertaining to the relevant disability date which would require the ALJ to request additional medical opinions and failed to provide additional evidence or new arguments that would change the outcome of the case. *See* 181 F.Supp.3d at 269. "With testimonial evidence, medical opinions, and submitted medical history, the ALJ was presented with sufficient information to make a decision and acted properly within the scope of [her] discretion by not ordering consultative examinations or attempting to obtain interrogatories that Asch could also have obtained." *Dietrich v. Saul*, 501 F.Supp.3d 283, 293 (M.D. Pa. 2020); *see* 20 C.F.R. §§ 404.1512, 404.1519a; *Thompson*, 45 F. App'x at 149; *see also Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) ("The ALJ is not required to order such [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient."); *Herring v. Colvin*, 181 F.Supp.3d 258, 269-72 (M.D. Pa. 2014).

The question is not whether Rivera demonstrated some evidence that could support a finding of disability. *See Kirk v. Colvin*, No. 4:13-CV-02735, 2015 WL 5915748, at *13 (M.D. Pa. Oct. 8, 2015). The question is whether the ALJ reasonably concluded that the record in totality failed to support Rivera's claims. *Kirk*, 2015 WL 5915748, at *13. An ALJ is afforded substantial discretion in addressing contradictions and reviewing the totality of the record for consistency. *See Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 n.9 (3d Cir. 2014) ("it is within the ALJ's discretion to weigh the evidence ..."); *Dula v. Barnhart*, 129 F. App'x 715, 718 (3d Cir. 2005); *Miller v. Comm'r of Soc. Sec.*, 172 F.3d 303, 305-06 (3d Cir. 1999). Thus, the

ALJ did not err in failing to order consultative examinations because there was sufficient evidence of record to make Rivera's RFC assessment.

According, substantial evidence supports the ALJ's RFC determination.

C.    THE ALJ DID NOT ABUSE HER DISCRETION TO NOT REOPEN THE PRIOR DECISION.

Lastly, Rivera submits that the ALJ should have reopened the prior decision issued in this matter because the current claim was within one year of the prior claim denial. (Doc. 17, at 24-25). The Commissioner responds that the ALJ did not abuse her discretion in deciding not to reopen the prior final decision that Rivera was not disabled from February 28, 2014, through January 9, 2018. (Doc. 20, at 24-25).

An ALJ may reopen a previously adjudicated application in certain circumstances. *See* 20 C.F.R. §§ 404.988, 404.989. The propriety of the ALJ's decision to reopen or decline to reopen a prior claim is beyond judicial review. "It is well settled that federal courts lack jurisdiction under § 205 [of the Social Security Act] to review the Commissioner's discretionary decision to decline to reopen a prior application or to deny a subsequent application on res judicata grounds." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977); *Stauffer v. Califano*, 693 F.2d 306, 307 (3d Cir. 1982)). "[B]ecause an administrative decision declining to reopen a prior claim or denying a subsequent claim on res judicata grounds does not require a hearing, it is not a 'final decision...made after a hearing' as required for jurisdiction under § 205(d)." *Tobak*, 195 F.3d at 187 (citing *Sanders*, 430 U.S. at 107-08); *see also* 20 C.F.R. § 404.903(l) (administrative actions not subject to judicial review include denial of a request to reopen a determination).

Here, the ALJ found "no basis for reopening the decision issued on January 9, 2019," and this Court has no jurisdiction to revisit that determination. (Doc. 14-2, at 29).

Despite a lack of jurisdiction to review the propriety of an ALJ's reopening determination, the federal courts do have the authority to determine whether a reopening has occurred. *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987), abrogated on other grounds by *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002). Plaintiff argues that the ALJ reopened the prior claim because "a sufficient amount of additional evidence of treatment was provided for the current claim, for a time period which overlapped the prior denial." (Doc. 17, at 16-17). In the Third Circuit, a *de facto* reopening will be found "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits." *Kaszer v. Massanari*, 40 F. App'x 686, 692 (3d Cir. 2002) (quoting *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985)). To determine whether a *de facto* reopening has occurred, the court must determine if the ALJ "address[ed] whether the prior adjudication [would] be used for its preclusive effect or whether it [would] be reopened." *Kaszer,* 40 F. App'x at 693-94. Then, the court must determine whether the ALJ "reviewe[ed] the entire record in the new proceeding and reache[ed] a decision on the merits." *Kaszer,* 40 F. App'x at 694 (quoting *Coup,* 834 F.2d at 317).

As previously noted, the ALJ specifically found "no basis for reopening the decision issued on January 9, 2019." (Doc. 14-2, at 29). The ALJ stated: "[Rivera]'s alleged onset date represents an implied request for reopening of a prior decision of an [ALJ] that was issued on January 9, 2018." (Doc. 14-2, at 29). The ALJ denied this implied request, finding no basis for reopening the decision. (Doc. 14-2, at 29). The ALJ explained that the January 9, 2018, decision is a "full and final determination" because Rivera did not appeal the Appeals Council

23

decision to deny his appeal. (Doc. 14-2, at 29) (citing the Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-2-8-5). In her decision, the ALJ reviewed Rivera's medical history, some of which was relevant to the earlier decision; However, regarding the overlapping time period, the ALJ reasoned that because the previous decision only addressed the time period between February 2014 and January 2018, reopening is unnecessary as her decision would address the time period between October 1, 2010, and December 31, 2019, the date last insured. (Doc. 14-2, at 29). Thus, the ALJ recognized the preclusive effect the prior decision had and considered the evidence accordingly.

For a *de facto* reopening to occur, the ALJ must have "review[ed] the entire record in the new proceeding and reache[d] a decision on the merits." *Kaszer*, 40 F. Appx. at 692 (quoting *Kane*, 776 F.2d at 1132). Rivera's conclusory statement that "good cause was established by new and material evidence," does not allege or satisfy the elements of "good cause" or "new and material evidence" as set forth in HALLEX I-2-9-40.[3] By Rivera's own argument and after carefully reviewing the ALJ's decision and the record, the Court finds that the ALJ did not address the entire record. There was no *de facto* opening of the prior decision, and the relevant period under consideration is between October 1, 2010, and December 31,

---

[3] "Good cause" for reopening a determination or decision exists where: (1) "new and material evidence is furnished;" (2) "[a] clerical error in the computation of benefits was made for a claim under title II;" or (3) "evidence that was considered in making the determination or decision clearly shows on its face that an error was made." HALLEX I-2-9-40(B). Evidence is "new and material" when: (1) "evidence is not part of the claim(s) record as of the date of the determination or decision;" (2) "evidence relates to the period on or before the date of the determination or decision;" and (3) "evidence shows facts that would have resulted in a different conclusion as to the eligibility, entitlement, or benefit amount than originally reached had the evidence been introduced or available at the time of the determination or decision." HALLEX I-2-9-40(C).

2019, the date last insured. (Doc. 14-2, at 29). Accordingly, the ALJ was under no obligation to reopen the previous decision and no such reopening took place.

V.     CONCLUSION

Based on the foregoing, the Commissioner's decision is **AFFIRMED**, judgment is entered in favor of the Commissioner and against Rivera, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: May 5, 2022**                                    s/ Karoline Mehalchick
                                                          **KAROLINE MEHALCHICK**
                                                          **Chief United States Magistrate Judge**

25